## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

—————————————————————— :
IN RE: COMPLAINT OF WEEKS :    Civil Action No. 04-494 (FLW)
MARINE, INC., AS OWNER OF THE :
WEEKS 263 LOADLINE DECK BARGE, :
WEEKS 272 CARFLOAT AND WEEKS :        **OPINION**
254 GANTRY CRANE, FOR :
EXONERATION FROM OR :
LIMITATION OF LIABILITY :
—————————————————————— :

**APPEARANCES:**

For Weeks Marine, Inc:
Mary Elisa Reeves
Donna Adelsberger & Associates, P.C.
6 Royal Avenue
P.O. Box 530
Glenside, PA 19038

For S.T. Hudson Engineers, Inc.
Edward V. Cattell, Jr.
Hollstein, Keating, Cattell, Johnson & Goldstein, P.C.
Willow Ridge Executive Office Park
750 Route 73 South
Suite 301
Marlton, NJ 08053

For Hill International, Inc:
George E. Pallas
Cohen, Seglias, Pallas & Greenhall, P.C.
2 White Horse Pike
Haddon Heights, NJ 08035

For South Jersey Port Corporation:
Dante C. Rohr
Mattioni, LLP
1316 Kings Highway
Swedesboro, NJ 08085

For W.H. Streit:
Stephen P. Pazan
Spector Gadon & Rosen, P.C.
1000 Lenola Road,  P.O. Box 1001
Moorestown, NJ 08057

**WOLFSON, District Judge:**

Presently before the Court are Weeks Marine Inc.'s ("Weeks Marine") Motion to Dismiss the strict liability claim asserted by claimant South Jersey Port Corporation ("SJPC"); SJPC's Cross-Motion for Summary Judgment; and W.H. Streit's ("Streit") Motion for Summary Judgment.  Claimants Hill International, Inc. ("Hill") and Hudson Engineers, Inc. ("Hudson"), and Third Party Defendant Streit have joined in Weeks Marine's Motion.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1333.  For the reasons set forth below, Weeks Marine's Motion is granted; SJPC's Cross-Motion for Summary Judgment is denied; and Streit's Motion for Summary Judgment is granted in part and denied in part, without prejudice.

## I.        BACKGROUND AND PROCEDURAL HISTORY

Weeks Marine was awarded the contract for the construction of the Battleship New Jersey Memorial Pier ("Memorial Pier"), which is located adjacent to the Beckett Street Terminal along the Delaware River in Camden, New Jersey.  Claim of SJPC at ¶¶ 15, 18. Beckett Street Terminal is owned by SJPC.  Id. at ¶ 4.  The construction of Memorial Pier included a substantial amount of pile driving, for which Weeks Marine was responsible.  It conducted the pile driving operations from April 27, 2001 through July 9, 2001 and from August 4, 2001 through August 23, 2001.  Id. at ¶ 21.

On the morning of August 22, 2001, SJPC observed a depression beneath a crane at one of the four berths of the Beckett Street Terminal.  Id. at ¶ 35.  Efforts were made to move the crane without success, and at approximately 4:20 p.m., a 125 foot fissure appeared, a loud crack was heard, and the crane collapsed over the sea wall.  Id.  Following the collapse, two of the Beckett Street Terminal berths were no longer serviceable and could no longer be used to dock vessels, or to load or unload cargo.  Id. at ¶¶ 36-37.  SJPC asserts that the collapse resulted from Weeks Marine's pile driving activities.

2

On August 8, 2003, SJPC filed suit in New Jersey Superior Court against (i) Weeks Marine; (ii) S.T. Hudson Engineers, Inc., the engineers for the Memorial Pier Project; and (iii) Hill International, Inc., the construction manager on the project, to recover damages for the collapse of the two berths of the pier at Beckett Street Marine Terminal.  South Jersey Port Corporation v. S.T. Hudson Engineers, Inc., Camden County Superior Court, Docket No. L-004508-03.  Subsequently, Weeks Marine filed the instant Complaint for Exoneration from or Limitation of Liability, pursuant to 46 U.S.C. § 181 et seq., and SJPC's suit filed in New Jersey Superior Court was stayed by this Court's Order dated February 6, 2004.  In re Weeks Marine, Inc., No. 04-494 (D.N.J. Feb. 6, 2004) (order directing issuance of notice and restraining suits).  In the instant action, SJPC has filed a claim for the damage sustained to its pier, and cross and counter claims have been filed by and against Hudson, Hill, the Home Port Alliance ("HPA"), which is the owner of Memorial Pier, and Streit, the contractor hired by SJPC to make repairs to the Beckett Street Marine Terminal in early 2001.

On June 23, 2004, Weeks Marine filed a Motion to Dismiss Count I of SJPC's claim.  Count I asserts that Weeks Marine should be strictly liable for its pile driving activity.  The Court held oral argument on the Motion on July 16, 2004.  Based on issues raised at argument, the Court denied Weeks Marine's Motion to Dismiss without prejudice, and ordered that if Weeks Marine re-filed its Motion, counsel should brief: (1) at what stage in the proceedings the Court is able to decide this motion and upon what record; (2) whether the Court can make a determination if pile-driving is abnormally dangerous in general, or whether the Court must evaluate if the pile-driving in this case was an abnormally dangerous activity; and (3) the application of the six factors listed in the Restatement (Second) of Torts, § 520 (1977), as adopted by the New Jersey Supreme Court in Dep't of Env't Prot v. Ventron Corp. 94 N.J. 473,

3

491-92 (1983), to the facts of this case.  In re Weeks Marine, Inc., No. 04-494 (D.N.J. July 16,

2004) (order denying Motion to Dismiss).  Weeks Marine refiled its Motion on December 29,

2004.  In response to this renewed motion, SJPC filed a Cross-Motion for Summary Judgment.

On July 9, 2004, Weeks Marine filed a Third Party Complaint against Streit, asserting

that if it is determined that Weeks' pile driving activities caused damage to the Beckett Street

Marine Terminal, Streit is partially or wholly liable for such damage based upon Streit's pile

driving in the course of performing repairs to the Beckett Street Terminal at the direction of

SJPC and under the supervision of Hudson.  Weeks Marine Third Party Complaint at ¶¶ 8-12.

Streit filed a Motion for Summary Judgment on June 16, 2005.

## III.    DISCUSSION

### A.    Applicable Standard

Weeks Marine's Motion is before the Court as a Motion to Dismiss pursuant to Fed. R.

Civ. P. 12(b)(6).  SJPC and Streit have filed Motions for Summary Judgment pursuant to Fed. R.

Civ. P. 56.  Because SJPC filed an Answer on April 2, 2004, Weeks Marine's Motion is in fact a

Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c).  See Fed. R. Civ. P.

12(h)(2).  See also Doe v. Div. of Youth and Family Servs., 148 F. Supp. 2d 462, 497 (D.N.J.

2001).  The standard for analyzing a Rule 12(c) motion is the same as the standard for a motion

to dismiss under Fed. R. Civ. P. 12(b)(6).  Id. (citations omitted).  In evaluating a Rule 12(c)

motion, the Court is to "view the facts presented in the pleadings and the inferences to be drawn

therefrom in the light most favorable to the nonmoving party."  Soc'y Hill Civic Ass'n v. Harris,

632 F.2d 1045, 1054 (3d Cir. 1980).  A claim should be dismissed only if "no relief could be

granted under any set of facts that could be proved."  Turbe v. Gov't of the Virgin Islands, 938

F.2d 427, 428 (3d Cir. 1991) (citing Unger v. Nat'l Residents Matching Program, 928 F.2d 1392,

4

1394-95 (3d Cir. 1991)).  If, however, on a motion made pursuant to Rule 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion is to be treated as one for summary judgment pursuant to Fed. R. Civ. P. 56.  Fed. R. Civ. P. 12(c).  See also Citisteel USA, Inc. v. General Elec. Co., 78 Fed. Appx. 832, 834-35 (3d Cir. 2003) (unpublished decision).

Upon consideration of matters outside the pleadings, summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A genuine issue of material fact is one that will permit a reasonable jury to return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  To show that a genuine issue of material fact exists, the nonmoving party may not rest upon mere allegations, but must present actual evidence in support thereof.  Id. at 249 (citing First Nat'l Bank of Arizona v. Cities Svc. Co., 391 U.S. 253, 290 (1968)).  In evaluating the evidence, the Court must "view the inferences to be drawn from the underlying facts in the light most favorable to the [nonmoving] party."  Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002) (quoting Bartnicki v. Vopper, 200 F.3d 109, 114 (3d Cir. 1999)).  As discussed herein, the Court will consider matters outside the pleadings, and will therefore conduct the analysis herein pursuant to Fed. R. Civ. P. 56.

### B.      Existence of a Strict Liability Cause of Action

### 1.      Admiralty Jurisdiction

District courts have exclusive jurisdiction over tort claims arising out of pile driving activities in navigable waters pursuant to 28 U.S.C. § 1333.  Jerome B. Grubart, Inc. v. Great Lake Dredge & Dock Co., 513 U.S. 527, 529 (1995).  "With admiralty jurisdiction comes the

application of substantive admiralty law."  East River S.S. Corp. v. Transamerica Delaval, Inc.,

476 U.S. 858, 864 (1986) (citing Executive Jet Aviation, Inc. v. Cleveland, 409 U.S. 249, 255

(1972)).  "Absent a relevant statute, the general maritime law, as developed by the judiciary,

applies."  Id. (citations omitted).

It is not contested that the general maritime law does not provide a strict liability cause of

action for pile driving activity, and therefore cannot serve as the basis for SJPC's strict liability

claim.[1]  "[T]he 'maritime law that governs a traditional maritime tort... requires findings of fault

and causation as predicates to liability."  In Great Lakes Dredge & Dock Co. v. City of Chicago,

1996 WL 210081, at *5 (N.D. Ill. Apr. 26, 1996) (quoting Md. Dep't of Natural Res. v. Kellum,

51 F.3d 1220, 1224 (4th Cir. 1995)).  "'Liability for collisions, allisions, and other types of

marine casualties is based upon a finding of fault that contributed to the damage incurred. From

earliest times, this rule has been consistently applied.'"  Kellum, 51 F.3d at 1224, (quoting

Schoenbaum, Admiralty and Maritime Law 444 (1987)).

SJPC does not contest that there is no strict liability cause of action pursuant to federal

maritime law, but instead argues that New Jersey law provides a strict liability cause of action

for this activity, and this law should be permitted to supplement (or, alternatively, should be

incorporated into) federal maritime law.  The exercise of federal admiralty jurisdiction does not

necessarily displace the application of state law.  Jerome B. Grubart, Inc., 513 U.S. at 545.

"Whether a state claim is litigated in federal court or a state forum, 'the extent to which state law

may be used to remedy maritime injuries is constrained by a so-called 'reverse- Erie' doctrine

---

[1] Strict liability has been incorporated into federal maritime law solely in the context of products liability.  East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 865 (1986) ("We join the Courts of Appeals in recognizing products liability, including strict liability, as part of the general maritime law.").  See also EAC Timberlane v. Pisces, Ltd., 745 F.2d 715, 722 n.13 (1st Cir. 1984) (rejecting plaintiffs' argument that the doctrine of strict liability has been incorporated into admiralty law, and noting that only strict products liability, which had been uniformly adopted by all of the states, supported incorporation).

which requires that the substantive remedies afforded by the States conform to governing federal maritime standards.'"  In re Complaint of Nautilus Motor Tanker Co., Ltd., 900 F. Supp. 697, 702 (internal quotations omitted).  State law is preempted by federal maritime law where a state remedy contravenes an essential purpose expressed by an act of Congress, works material prejudice to the characteristic features of the general maritime law, or interferes with the proper harmony and uniformity of that law in its international and interstate relations.  American Dredging Co. v. Miller, 510 U.S. 443, 447 (1994); Southern Pac. Co. v. Jensen, 244 U.S. 205, 216 (1917).

For this Court to reach SJPC's argument that the federal maritime law requiring proof of fault and causation should not preempt its state strict liability claim, SJPC must first demonstrate that New Jersey would recognize such a claim.  SJPC admits that no New Jersey court has held a defendant strictly liable for pile driving activity (nor does any New Jersey court appear to have confronted the question).  However, SJPC argues that the Supreme Court of New Jersey would recognize such a claim.  If the Court finds that the Supreme Court of New Jersey would fail to so hold, SJPC may not maintain a strict liability claim because there would be neither a federal nor a state law basis for asserting such a claim.[2]

---

[2] Because I conclude that New Jersey would not allow a strict liability claim based upon pile driving activity, I need not reach the issue of preemption.  Nonetheless, I believe that even if New Jersey were to recognize pile driving as an abnormally dangerous activity, such a claim would likely be preempted by federal maritime law. See, e.g., EAC Timberlane, 745 F. Supp. at 721-22 (holding that the uniformity of federal maritime law would be disrupted where, as here, the law varies from state to state with respect to the imposition of strict liability for a particular activity); Great Lakes Dredge & Dock Co., 1996 WL at *5 (holding that a pile driving case was a "general maritime tort" case and that application of strict liability would have the proscribed effect of altering the 'substantive maritime law' and ultimately deprive the parties of substantial admiralty rights).  While SJPC argues that EAC Timberlane is distinguishable because Congress had preempted state law with the enactment of the Carriage of Goods by Sea Act (COGSA), the First Circuit clearly discussed the preemption issue with respect to the "principles of general maritime law" which "govern the determination of liability *of those defendants who are not regulated by COGSA*."  EAC Timberlane, 745 F.2d at 721.  Moreover, SJPC's argument is a distinction without a difference.  As noted, substantive admiralty law can be based either on a statute, or in the absence of a statute, the general maritime law as developed by the judiciary, and interference with such law is an express alternative basis for preemption.

## 2.     Abnormally Dangerous Activity

SJPC argues that the Supreme Court of New Jersey would find that the vibrations caused by pile driving constitute an abnormally dangerous activity because the nature of the activity is similar to blasting from rocket testing, which the Court held to be an ultra-hazardous activity in Berg v. Reaction Motors Div., Thiokel Chemical Corp., 37 N.J. 396 (1962). Following Berg, however, the Supreme Court of New Jersey adopted the analysis of the Restatement (Second) of the Law of Torts (1977) ("Restatement") to determine whether a defendant should be strictly liable for an "abnormally dangerous" activity.  Ventron., 94 N.J. at 488 ("Since Berg, the Restatement… has replaced the "ultrahazardous" standard with one predicated on whether the activity is "abnormally dangerous").  The doctrine imposes liability upon those who introduce an extraordinary risk of harm into the community, despite any social utility that the activity may provide.  T& E Indus., Inc. v. Safety Light Corp., 123 N.J. 371, 386-87 (1991).

Section 520 of the Restatement requires consideration of six factors in determining whether an activity is abnormally dangerous:

> (a) the existence of a high degree of risk of some harm to the person, land or chattels of others;
> (b) the likelihood that the harm that results from it will be great;
> (c) the inability to eliminate the risk by the exercise of reasonable care;
> (d) the extent to which the activity is not a matter of common usage;
> (e) the inappropriateness of the activity to the place where it is carried; and
> (f) the extent to which its value to the community is outweighed by its dangerous attributes.

> Restatement (Second) of Torts § 520 (1977).

All of the factors are to be considered, and no single factor in § 520 alone is necessarily sufficient for the conclusion that an activity is abnormally dangerous.  Restatement § 520,

comment *h*.  It is not necessary that each factor be present if the other factors weigh heavily for or against a finding that an activity is abnormally dangerous.  Restatement § 520, comment *f*.  Ordinarily, a court must find that several factors apply in order to impose strict liability.  Id.  Weeks Marine argues that the Court can perform the Restatement analysis, and determine whether SJPC has stated a strict liability claim as a matter of law, on a Motion to Dismiss.  In support, Weeks Marine cites to Fletcher v. Conoco Pipe Line Co., 129 F. Supp. 2d 1255, 1260 (W.D. Mo. 2001), in which the court dismissed plaintiffs' strict liability claim at the motion to dismiss stage as a result of plaintiffs' failure to meet their "burden of coming forward with facts sufficient to support a theory of strict liability" based upon an analysis of Restatement § 520.

Weeks Marine also cites to In re Chicago Flood Litig., 680 N.E.2d 265, 279-281 (Ill. 1997), and In re Chicago Flood Litig., No. 93C1214, 1993 WL 239041 (N.D. Ill. June 28, 1993), the only federal case to perform the Restatement § 520 analysis with respect to pile driving.[3]  In those cases, both the federal and state court found that pile driving was not abnormally dangerous.  The Supreme Court of Illinois upheld the appellate court's determination that the complaints failed to sufficiently allege facts to meet the first three factors of Restatement § 520, because the "complaints pled their conclusion -- pile driving is inherently or intrinsically

_____

[3] In response, SJPC also cites Vern J. Oja & Assocs. v. Washington Park Towers, Inc., 569 P.2d 1141, 1143-44 (Wash. 1977), and William Kelly and Kels Café, Inc. v. Buckley Constr. Co., 1978 WL 120951 (Pa. Com. Pl. Dec. 22, 1978), two state cases holding that pile driving constitutes an abnormally dangerous activity pursuant to Restatement § 520.  The Court notes that it is not bound by any extra-jurisdictional cases with respect to whether the New Jersey Supreme Court would find that the pile driving in this case constitutes an abnormally dangerous activity.  However, I find the analysis in these two cases of particularly limited persuasive effect.  The Supreme Court of Washington's "analysis" in Vern J. Oja consists solely of a conclusory statement that "we find that there is no significant distinction between vibrations caused by an explosion and vibrations caused by pile driving," a citation to the Restatement factors, and a statement that "we find that pile driving sufficiently meets these criteria; the standard of strict liability was properly imposed." Vern J. Oja., 569 P.2d at 1143-44.  The Kelly court, on a Motion for a New Trial or Judgment N.O.V., found that the court properly instructed the jury that pile driving was an abnormally dangerous activity pursuant to Restatement § 520, and placed emphasis on the fact that pile driving is not "appropriate in a built-up area of the City, close to dwellings and business properties."  Kelly, 1978 WL 120951, at *4.  The parties do not suggest, and the Court does not find, that the properties on the Camden waterfront are of the same character as the residential dwellings and significant commercial business that line I-95, the site of the pile driving activity in Kelly.

dangerous -- without pleading sufficient facts showing why." <u>In re Chicago Flood Litig.</u>, 680 N.E.2d at 280.

SJPC's claim certainly would not withstand dismissal pursuant to Rule 12(c) based upon the holdings of those courts.  SJPC's claim asserts that Weeks Marine was responsible for and conducted all of the pile driving for Memorial Pier.  SJPC Claim ¶ 19.  The claim further describes the types of vibratory and impact hammers used by Weeks Marine to drive the piles. <u>Id.</u> at ¶¶ 20, 22-32.  SJPC asserts that the collapse of the piers and resulting damages and losses were caused by "Weeks' negligence" and actions taken with respect to the construction of the Memorial Pier; the insufficiency and unseaworthiness" of the Weeks Marine vessels; and by the "fault, neglect and incompetence" of the operators, master and crew of the Weeks Marine vessels.  <u>Id.</u> at ¶ 40.  The claim concludes in its first count that the "pile driving activity conducted by Weeks Marine constitutes an ultra-hazardous activity which introduces an unusual danger into the community." <u>Id.</u> at ¶ 46.  SJPC makes no allegations with respect to *any* of the <u>Restatement</u> factors.

The Court is not persuaded, however, by the reasoning in <u>Fletcher</u>, nor that of the Illinois Supreme Court <u>In re Chicago Flood</u>, that a motion to dismiss is appropriate in this setting based upon SJPC's failure to plead sufficient facts.  Pursuant to <u>Fed. R. Civ. P.</u> 8(a), SJPC is only required to plead "a short and plain statement of the claim."  Moreover, even if the Court were to require that allegations regarding the <u>Restatement</u> factors be plead in the claim, presumably SJPC would amend to so comply.

The <u>Restatement</u> itself is instructive on this point.  Whether an "activity is an abnormally dangerous one is to be determined by the court, upon consideration of all the factors listed in this Section, and the weight given to each that it merits upon the facts in evidence."  <u>Restatement</u> §

520, comment *l*.  The Restatement explicitly considers a weighing of facts *in evidence*, instead of making a decision based upon the pleadings alone.  Moreover, the Court notes the difficulty of performing the Restatement § 520 analysis pursuant to Rule 12(c) because it would be required to accept the parties' arguments as to each of the factors as truth, without any idea as to whether the arguments are grounded in fact.   The Court thus finds that the Restatement § 520 analysis is more appropriately undertaken upon a more complete record, and will therefore consider matters outside the pleadings pursuant to Fed. R. Civ. P. 56.[4]  Indeed, SJPC has moved for summary judgment on its claim.

In addition, the Court conducts the Restatement analysis with respect to Weeks Marine's pile driving activity alleged in SJPC's claim, rather than pile driving activity generally.  "Under the Restatament analysis, whether an activity is abnormally dangerous is to be determined on a case-by-case basis, taking all relevant circumstances into consideration."  Ventron, 94 N.J. at 491.  See also T&E Indus., 123 N.J. at 386-87 (holding that Appellate Division erred in determining that the processing of radium and disposal of its waste product was *per se* abnormally dangerous); Amland Prop. Corp. v.  Aluminum Co. Of Am., 711 F. Supp. 784 (D.N.J. 1989) (Barry, J.).

### (a) Existence of a high degree of risk of some harm to the person, land or chattels of others

SJPC argues that Weeks Marine's pile driving posed a risk of injury or death to persons operating the pile driver, and further, that pile driving activities and the vibrations they cause present a risk of damage to nearby buildings or structures.  Deposition of Martin Corcoran at

---

[4] Although discovery had not been completed in this matter prior to the filing of the various motions, no party has submitted an affidavit pursuant to Rule 56(f) identifying facts that, if discovered, would bear upon the Court's Restatement analysis and preclude summary judgment.  See Dowling v. City of Philadelphia, 855 F.2d 136, 139-40 (3d Cir. 1988) (citations omitted).

73:18-74:14, attached as Exh. H to SJPC Motion for Summary Judgment; Declaration of

Leonard E. Van Houten, P.E. at ¶ 11, attached as Exh. F to SJPC Motion for Summary

Judgment.

      To constitute an abnormally dangerous activity, New Jersey requires the risk of harm to

be "extraordinary."  T& E Indus., 123 N.J. at 386-87 ("Despite the social utility of the activity,

[the abnormally dangerous activity] doctrine imposes liability on those who, for their own

benefit, introduce an extraordinary risk of harm into the community.").  The Court does not find

that SJPC has demonstrated that the risk of harm imposed on the community by Weeks Marine

is "extraordinary," in contrast, for example, to the danger posed by oil spills or the transporting

of hazardous substances.

      Indeed, Corcoran, a Weeks Marine employee with significant pile driving experience,

testified that he was not aware of a single instance where a building was damaged by Weeks

Marine's pile driving, or in any instance within his realm of knowledge.  SJPC Exh. H at 74:16-

75:18.  The main risk of pile driving identified by Corcoran was that those engaged in the

activity "lose fingers and arms."  Id. at 71:19-20.  Van Houten, a professional engineer serving

as an expert for SJPC, compared the potential for collateral damage from pile driving "albeit in

varying degrees, to the effects of earthquakes, heavy wheeled traffic, blasting, mining and

certain heavy industrial operations involving drop hammers and eccentric rotating machinery."

Van Houten Declaration at ¶ 12, Exh. F to SJPC's Motion for Summary Judgment.  Although the

Court may find that certain of these activities create an extraordinary risk of harm, Van Houten

fails to discuss whether the pile driving activities conducted by Weeks Marine were more akin to

"heavy wheeled traffic," which the Court would not find constitutes an extraordinary risk of

harm, or to some of the other activities listed, which the Court may find constitute an

12

extraordinary risk of harm.  SJPC therefore fails to demonstrate that this factor supports a finding that New Jersey would consider pile driving abnormally dangerous.

**(b)  Likelihood that the harm that results from the activity will be great**

SJPC argues that Weeks Marine's pile driving resulted in the complete loss of Beckett Street Marine Terminal, which required extensive demolition and reconstruction costing millions of dollars.  On that basis alone, SJPC asserts that the likelihood that harm would result from Weeks Marine's pile driving activity was great.  The Court finds that such a conclusory allegation falls short of satisfying the inquiry required to prove Restatement factor (b).

To prove Restatement factor (b), SJPC must show that the method of pile driving used by Weeks Marine was likely to produce significant harm, not simply that SJPC suffered significant harm as an alleged result of Weeks Marine's pile driving activities.  See, e.g., Biniek v. Exxon Mobil Corp., 358 N.J. Super. 587, 602 (Law Div. 2002) (analyzing factor (b) with respect to whether there is a significant likelihood of harm from "gasoline storage or transportation," rather than the alleged harm suffered by plaintiff).  SJPC did not submit evidence with respect to the likelihood of harm from Weeks Marine's pile driving activity.  Rather, SJPC merely asserts that because damage to the Beckett Street Marine Terminal occurred during the time Weeks Marine was engaged in pile driving activity, such harm was necessarily the likely result of that activity.  That allegation, without more, cannot satisfy the inquiry required to prove Restatement factor (b).

**(c)  Inability to eliminate the risk by the exercise of reasonable care**

Courts analyzing Restatement § 520 have held that although no one factor is determinative, factor (c) is at the heart of an abnormally dangerous determination.  See, e.g.,

13

Anderson v. Farmland Indus., Inc., 136 F. Supp.2d 1192, 1199 (D. Kan. 2001); Fletcher v.

Conoco Pipe Line Co., 129 F. Supp. 2d 1255 (W.D. Mo. 2001); Toledo v. Van Waters & Rogers,

Inc., 92 F. Supp.2d  44, 56 (D.R.I. 2000); Chaveriat, 1994 WL 583598, at *5.  "'If an activity

can be performed safely with ordinary care, negligence serves both as an adequate remedy for

injury and a sufficient deterrent to carelessness' and the imposition of strict liability is

unnecessary."  Fletcher, 129 F. Supp. 2d at 1261 (quoting Chaveriat, at *5).

        SJPC argues that because the factors influencing the danger posed by vibrations cannot

be controlled by the pile driver, it is impossible to eliminate the risk posed by pile driving.

However, the record supports, and the Court finds, that pile driving can be carried on safely by

the exercise of due care on the part of Weeks Marine.  SJPC's claim includes a negligence count

in addition to a strict liability count.  SJPC Exh. A at ¶¶ 48-51.  Although SJPC may plead in the

alternative, SJPC's Affidavit of Merit submitted by Francis Xavier McGeady pursuant to

N.J.S.A. 2A:53A-27, strongly supports the conclusion that the risk presented here can be

eliminated through the exercise of due care.  In McGeady's professional opinion,

> there exists a reasonably probability that the care, skill or knowledge exercised or
> exhibited in the practice, work, or performance of Weeks Marine, Inc. that is the subject
> of the complaint, fell outside occupational practice requirements of construction
> engineers by failing to carefully and thoroughly monitor the condition of the Beckett
> Street Terminal prior to and during the construction of the Memorial Pier, and by failing
> to use monitoring procedures and techniques made available by the engineering
> community for this venture.

Francis Xavier McGeady Affidavit of Merit, attached as Exh. 2 to Weeks Marine's

Motion to Dismiss at ¶ 17.  McGeady's opinion suggests that the harm in this case could have

been avoided by the use of due care and thus weighs against a finding that no exercise of

reasonable care on the part of Weeks Marine could have eliminated the risk.  SJPC's position is

similarly belied by Plaintiff's expert, Van Houten, who also couches his conclusion in terms of

due care.  In the same paragraph that Van Houten refers to vibrations and shock waves not being

controllable by the operator in the field, he opines that "[s]pecial precautions in engineering,

design, planning, and monitoring of construction are warranted but not always effective."  See

Van Houten Declaration ¶ 13, Exh. F to SJPC's Motion for Summary Judgment.

In addition, SJPC's argument that Weeks Marine's pile driving produces uncontrollable

vibrations, and therefore is similar to the blasting held to be ultrahazardous in <u>Berg</u>[5] has been

rejected by other courts.  In <u>In re Chicago Flood Litig.</u>, the Supreme Court of Illinois specifically

rejected plaintiffs' contention that the presence of uncontrollable vibrations means that an

activity cannot be performed safely through the exercise of ordinary care.

> In our opinion, the common factor, vibrations, is not sufficient to place the case under
> consideration in the same category as blasting cases. Machines, motors and
> instrumentalities which cause vibrations are in such common use in present-day activities
> and the probability of damage from their use is so variable that the mere fact that all of
> them cause vibrations is not a reasonable basis for common classification for liability.
> There are many cases involving damage by vibrations set in motion by instrumentalities
> other than explosives, e.g., pile drivers, drills, pavement breakers, etc.  The
> overwhelming majority require allegation and proof of negligence.

680 N.E.2d 280 (citing <u>Trull v. Carolina-Virginia Well Co.</u>, 264 N.C. 687 (1965)) (internal

citations omitted).   The Court agrees, and finds that to the contrary, SJPC's own professionals

have suggested that the exercise of care by Weeks Marine could have prevented the harm that

befell SJPC.

### (d) Extent to which the activity is not a matter of common usage

"An activity is a matter of common usage if it is customarily carried on by the great mass

of mankind or by many people in the community.  It does not cease to be so because it is carried

---

[5] The Court also notes that because the <u>Berg</u> case was decided prior the New Jersey's adoption of the <u>Restatement</u> analysis, its holding that blasting is an ultra-hazardous activity is of limited precedential value.

on for a purpose peculiar to the individual who engages in it." Restatement of Torts § 520,

comment *i*. See also Amland, 711 F. Supp. at 807. "The usual dangers resulting from an

activity that is one of common usage are not regarded as abnormal, even though a serious risk of

harm cannot be eliminated by all reasonable care." Restatement of Torts § 520, comment *i*.

While courts have held that the number of people engaged in a given activity typically represents

the "deciding characteristic" of whether a particular usage is common, In re Chicago Flood

Litig., 680 N.E.2d at 281, the scope of the applicable "community" of users to which

Restatement comment *i* refers has not been uniformly interpreted. Many courts have interpreted

"community" broadly and held that only those activities widely engaged in constitute matters of

common usage.[6] Other courts have interpreted the scope more narrowly to encompass a

smaller, focused "community."[7]

  This Court recognizes that pile driving is a common activity along the shores of the

Delaware River[8], but concludes the appropriate analysis is not whether it is a commonplace

---

[6] See, e.g., Warner v. Norfolk & Western Ry. Co., 758 F. Supp. 370, 372-74 (W.D. Va. 1991) (holding operation of a train a common usage); Voelker v. Delmarva Power and Light Co., 727 F. Supp. 991, 994 (D. Md. 1989) (holding "transmission of electricity is a daily occurrence in every community" and a matter of common usage); Caveny v. Raven Arms Co., 665 F. Supp 530, 532 (S.D. Ohio 1987) (holding manufacture and distribution of handguns a common usage); Biniek, 358 N.J. Super. at 602 ("use transportation, and storage of gasoline is unquestionably common"); In re Chicago Flood Litig., 680 N.E.2d at 280-81 (rejecting proposition that common industry practice cannot be considered abnormally dangerous and holding pile driving uncommon because it is engaged in by few people); Walker Drug Co. v. La Sal Oil Co., 902 P.2d 1229, 1233, (Utah 1995) (holding operation of a gas station common usage); Klein v. Pyrodyne Co., 810 P.2d 917, 921 (Wash. 1991) (holding presentation of public fireworks display uncommon because it is engaged in by few people).

[7] See, e.g., Apodaca v. AAA Gas Co., 73 P.3d 215, 227 (N.M. Ct. App. 2003) (expressly concluding "the activity must be uncommon in the circumstances in which it causes injury" and holding delivery of loaded propane trucks for repair common usage); New Meadow Holding Co. V. Washington Water Power Co., 687 P.2d 212, 216 (Wash. 1984) ("underground transmission of gas is a matter of common usage" among such companies); Bennett v. Larson Co., 348 N.W.2d 540, 553 (Wis. 1984) (holding annual, aerial application of chemical pesticides to crops a common activity among growers); Fleege v. Cimpl, 305 N.W.2d 409, 415 (S.D. 1981) (holding use of electrically-operated submersible pumps by homeowners common along Missouri River).

[8] Weeks Marine presents deposition testimony from several engineers and marine construction professionals indicating that pile driving is a commonplace activity along the Delaware River. See generally Deposition of Greg Sparks, attached as Exh. 2 to Weeks Marine's Opposition to Streit's Motion for Summary Judgment at 34:9-35:24 (testifying that he was involved "in a pile driving project at least every year" from the late 1980s through 2003, throughout New Jersey, Pennsylvania, Delaware and Maryland, and that on the basis of his marine construction experience, pile driving is commonplace for constructing or repairing piers or shore side structures); Deposition of

activity in marine construction, but rather, whether it is a common activity among average citizens.  See Restatement of Torts § 520, comment *i* (contrasting the use of an average automobile with the use of a tank or other motor vehicle of extraordinary size and weight and noting that only the former is commonly used in the community; and noting that blasting, the use of explosives, and activity on oil lands are all necessary and proper means of conducting the relevant activities, but are not commonly carried out by a large percentage of the population).  Although there are no allegations in SJPC's claim regarding the relative numbers of people engaged in pile driving, the Court is confident that few lay persons engage in pile driving activities.  Accordingly, this factor weighs in favor of SJPC.

### (e) Inappropriateness of the activity to the place where it is carried on

SJPC does not contest that pile driving in a riverbed to construct waterfront facilities is the only means of installing the required structural supports, and thus is an appropriate activity to conduct in the river.  See also Deposition of Richard Long, Chief Operating Officer of Hudson, attached as Exh. 4 to Weeks Marine's Opposition to Streit's Motion for Summary Judgment (testifying that pile driving is "the only way I know that you build a pier or rehabilitate a pier").  In addition, although the testimony of the engineer cited above does not support a finding that pile driving is a matter of common usage it does support a finding that Weeks Marine's pile driving was a site-appropriate activity.

---

Don Ash, attached as Exh. 3 to Weeks Marine's Opposition to Streit's Motion for Summary Judgment at 92:11-93:24 (testifying that 80 percent of his marine construction projects involved pile driving, and that pile driving is common on the Delaware River); Deposition of Michael Fasnacht, attached as Exh. 5 to Weeks Marine's Opposition to Streit's Motion for Summary Judgment at 152:12-17 (testifying that pile driving is a commonplace activity along the rivers of New Jersey); Deposition of Al Flinn, attached as Exh. 6 to Weeks Marine's Opposition to Streit's Motion for Summary Judgment at 101:14-17 (testifying that "[p]ile driving is very common for marine structures, rivers of New Jersey and Pennsylvania").

**(f)  Extent to which its value to the community is outweighed by its dangerous attributes**

It is similarly undisputed that the construction of a permanent mooring for the Battleship New Jersey, a floating museum and venue for public events and memorials, is of significant value to the region's efforts to revitalize the Camden waterfront.   If activities "can be carried on only in a particular place" and they "are of sufficient value to the community, they may not be regarded as abnormally dangerous where they are so located, since the only place where the activity can be carried on must necessarily be regarded as an appropriate one." Restatement § 520, comment *j*.   Here, pile driving in the Delaware River was the only manner in which this activity of value to the community could be accomplished.  Although SJPC argues that Weeks Marine's pile driving was inappropriate because of its proximity to the Beckett Street Marine Terminal, a structure built in 1930 that was sensitive to the type of vibration produced by pile driving activities, the Court does not find that this potential for danger outweighs the above considerations and thus does not require a finding that the pile driving activity was *abnormally* dangerous.  Furthermore, SJPC's position is belied by the fact that it hired Streit to conduct *precisely the same activity* -- pile driving -- to repair the Beckett Street Terminal.  W.H. Street Crossclaim at ¶¶ 4, 7-8.

The Court therefore finds that, on balance, consideration of the evidence pursuant to the Restatement factors does not lead to the conclusion that the Supreme Court of New Jersey would find that Weeks Marine's pile driving activity was abnormally dangerous, and that strict liability should therefore be imposed.  As such, SJPC does not have a state law claim for strict liability with which to supplement the general maritime law; there is no state law to preempt.  SJPC's

strict liability claim shall therefore be dismissed, and Weeks Marine's Third Party claim for contribution or indemnity from Streit based upon strict liability also shall be dismissed.[9]

     **C.**     **W.H. Streit's Motion for Summary Judgment on the Negligence Claims**

     In addition to joining Weeks Marine's Motion to Dismiss the strict liability claim, and filing its own Motion for Summary Judgment as to that claim, Streit also has moved for summary judgment on the negligence claims on the grounds that there is no expert testimony regarding negligence or causation as to the activities of Streit, and that Streit cannot be responsible for damage to the pier because it followed the specifications and instructions of the owner and the owner's engineer.  Factual discovery in this matter was to be completed by September 1, 2004, and expert reports are scheduled to be served by October 3, 2005.  In re Weeks Marine, Inc., No. 04-494 (D.N.J. Feb. 3, 2005) (second amended scheduling order).  As Streit acknowledges in its motion, the testimony of experts may be essential to questions of liability and causation, and the Court finds that the parties opposing Streit's motion should be entitled to consult with their experts before ruling on this motion.  The Court finds that it is premature to grant summary judgment on the negligence claims at this time, and denies Streit's Motion without prejudice.

**III.**    **CONCLUSION**

    For the reasons discussed herein, SJPC's strict liability claim shall be dismissed, and Weeks Marine's third party claim against Streit based upon strict liability shall also be dismissed. SJPC's Cross-Motion for Summary Judgment shall be denied.  An appropriate order will follow.

---

[9] The Court notes that this is Weeks Marine's requested result.  Weeks Marine's Brief in Opposition to Streit's Motion for Summary Judgment, at 9.

/s/ Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge