**NOT FOR PUBLICATION** **[100]**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: COMPLAINT OF WEEKS MARINE, INC. AS OWNER OF THE WEEKS 263 LOADLINE DECK BARGE, WEEKS 272 CARFLOAT AND WEEKS 254 GANTRY CRANE, FOR EXONERATION FROM OR LIMITATION OF LIABILITY | Civil Action No. 04-0494<br><br>**OPINION** |

**WOLFSON, UNITED STATES DISTRICT JUDGE**

Before the Court is the motion by Plaintiff South Jersey Port Corporation ("Plaintiff"), pursuant to L. Civ. R. 7.1, for reconsideration of the Court's Amended Order of August 1, 2006, granting the motion for summary judgment filed by Defendant S.T. Hudson Engineers, Inc. ("Defendant"), on the Cross-Claim asserted by Plaintiff against Defendant.[1] I find that Plaintiff presents no controlling law not already considered by the Court in this matter, nor demonstrates that my August 1, 2006 Amended Opinion contained an error of law requiring modification of the judgement therein. Furthermore, while Plaintiff presents additional facts in support of its arguments against Defendant's earlier motion for summary judgment, I find that such facts were available to Plaintiff before and during the Court's original consideration of that motion, and are inappropriately raised for the first time on this motion for reconsideration. Accordingly, for the reasons discussed more fully below, Plaintiff's motion for reconsideration is denied.

[1] I originally granted Defendant's motion for summary judgment in an Order dated June 30, 2006, which incorporated the reasons set forth in my Opinion filed the same date. Thereafter, on August 1, 2006, I filed an Amended Opinion and entered an Amended Order in which I memorialized certain editing changes to my original Opinion. Although Plaintiff filed this motion for reconsideration prior to August 1, 2006, I construe it as an request for reconsideration of the Amended Order I filed that day.

**1. BACKGROUND**

This case arises out of the 2001 partial collapse of the Beckett Street Marine Terminal ("Beckett Street Terminal"), which is operated by Plaintiff and located along the east shore of the Delaware River in Camden, New Jersey. See generally In Re Weeks Marine, 2006 WL 2191338, *1-3 (D.N.J. August 1, 2006).[2] In a Cross-Claim against Defendant, Plaintiff alleged that the collapse was caused by an underwater landslide resulting from vibrations created by pile driving conducted by Weeks Marine, Inc., and overseen by Defendant, during construction of the Battleship USS New Jersey Memorial Pier. Id. Following the collapse, Plaintiff filed an insurance claim with its carrier, Lexington Insurance Company ("Lexington"), for losses totaling $14,716,328. Id. After an initial coverage dispute, Plaintiff filed a declaratory action against Lexington which was later resolved by a written settlement pursuant to which Lexington paid Plaintiff $7,315,926 for its damages associated with the Beckett Street Terminal collapse. Id. Also, as part of that settlement, Lexington purported to assign to Plaintiff Lexington's right to pursue an action in subrogation against any third-party tortfeasor responsible for Plaintiff's damages. Id.

Thereafter Plaintiff commenced an action against Defendant based on two separate theories of recovery. Id. at *3. First, Plaintiff asserted that, as the assignee of Lexington's subrogation rights, it stood in Lexington's shoes and was entitled to assert an action against Defendant for reimbursement of Lexington's payment to Plaintiff under the insurance contract. Id. Second, Plaintiff asserted that, notwithstanding its status as assignee of

[2] A lengthy and detailed account of the factual and procedural history of this case is included in my August 1, 2006, Amended Opinion. For the sake of brevity, I do not repeat that recitation here.

Lexington's subrogation rights, Plaintiff retained an independent right to sue Defendant for the balance of its losses not compensated by its insurance settlement with Lexington. Id. Defendant moved for summary judgment on Plaintiff's Cross-Claim, and argued that Plaintiff was precluded from pursuing an action against it because: (1) Plaintiff's independent right to assert a claim against Defendant, or any other tortfeasor, was extinguished upon Plaintiff's settlement with Lexington by the operation of equitable subrogation; (2) Lexington's purported assignment of its subrogation rights to Plaintiff violated the Supreme Court of New Jersey's prohibition against pre-judgment assignment of tort claims; (3) even if Lexington's assignment to Plaintiff was valid, Plaintiff was bound by judicial estoppel to the factual position taken by Lexington during Plaintiff's declaratory action, in which Lexington expressly disputed Defendant's responsibility for Plaintiff's damages; and (4) Plaintiff had been fully compensated by its settlement with Lexington, thus a successful action against Defendant would result in a double recovery, in violation of the equitable principles underlying subrogation.[3] Id.

Plaintiff filed written opposition to Defendant's motion in which it disputed each of Plaintiff's assertions. Specifically, Plaintiff argued that it did retain an independent right to sue Defendant, or any other appropriate tortfeasor, for its uncompensated damages arising out

---

[3] As an additional component to this argument, Defendant asserted that Lexington's payment to Plaintiff was intended as satisfaction of *all* claims associated with the Beckett Street Terminal Collapse and that the release in the written settlement agreement between them was intended to release all potential tortfeasors. I rejected those arguments and found that the plain language of the settlement agreement made clear that Lexington's payment was intended to satisfy only Plaintiff's claim under the insurance contract between the two and that the written release applied only to Lexington. See In Re Weeks Marine, 2006 WL 2191338, *8 (D.N.J. August 1, 2006).

of the Becket Street Terminal collapse. See id.at *4. Plaintiff further argued that Lexington's assignment of it's subrogation rights to Plaintiff was valid, and afforded Plaintiff the legal right to proceed against Defendant in an action for reimbursement to recover the full value of Lexington's payment to Plaintiff pursuant to their insurance settlement. Id. at *6. Additionally, Plaintiff disputed the applicability of judicial estoppel, and argued that despite being Lexington's assignee, it was not bound by the factual position taken by Lexington in Plaintiff's earlier declaratory judgment action. See id. at *9 n.14. Finally, Plaintiff also argued that it had suffered damages beyond those for which it had been compensated by Lexington's $7,315,926 payment. In support of that assertion, Plaintiff submitted certain affidavits and other exhibits which it claimed demonstrated uncompensated losses of approximately $6,304,000. Id. at *9.

After considering the parties various arguments, I filed an Opinion in which I made several findings of fact and conclusions of law. Id. at *4-9. First, I concluded that Plaintiff retained an independent right of action against Defendant or any other tortfeasor to recover such damages not already compensated by Lexington's $7,315,926 insurance payment, assuming the existence of such damages. Id. at *4-5. Additionally, I found that Lexington's assignment of its subrogation rights to Plaintiff was not of the variety typically prohibited under New Jersey Law. Id. at *7. However, I nevertheless concluded that the assignment was invalid on the facts presented because it would position Plaintiff to receive a double recovery for its demonstrated losses.[4] Id. Finally, I found that Plaintiff had failed to present competent

[4] As I noted in my August 1, 2006 Opinion, Plaintiff asserted that it was entitled to a true double recovery for its damages. That is, Plaintiff argued that, as Lexington's assignee, Plaintiff was entitled to

evidence of the existence of any losses not already compensated by Lexington's $7,315,926 payment. Id. at *9. Specifically, I concluded that Plaintiff's claim of approximately $6,304,000 in uncompensated damages was simply an estimate of the depreciated value of its original losses. That is, rather than having demonstrated any remaining uncompensated losses, I found that Plaintiff had merely depreciated its original damages and restated those amounts without consideration of the value of Lexington's $7,315,926 payment. On that basis, I concluded that Plaintiff had been fully compensated and that any additional recovery for damages associated with the Becket Street Terminal collapses -- whether the product of an independent tort action by Plaintiff against Defendant, or as an assertion of Lexington's subrogation rights -- would result in a double recovery, barred by general equitable principles. Id. Accordingly, I granted Defendant's motion for summary judgment on Plaintiff's Cross-Claim. Id.

On July 10, 2006, Plaintiff filed this motion for reconsideration, to which Defendant filed timely opposition. On July 28, 2006, Plaintiff filed an appeal of my original Order with the United States Court of Appeals for the Third Circuit. On September 2, 2006, the Third Circuit filed an Order staying Plaintiff's appeal, pending the outcome of this motion for reconsideration.[5]

---

recover from Defendant $7,315,926, the full amount paid to Plaintiff by Lexington, in an action in subrogation. See In Re Weeks Marine, 2006 WL 2191338, *8 n.14 (D.N.J. August 1, 2006). In this motion for reconsideration, Plaintiff does not abandon that argument, but insists, for various reasons, that its recovery of an additional $7,315,926 from Defendant would not constitute a windfall double recovery.

[5] Generally, the timely filing of a notice of appeal is an event of "jurisdictional significance," which immediately confers jurisdiction on the court of appeals "and divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982); Venen v. Sweet, 758 F.2d 117, 120-21 (3d Cir. 1985). "This rule prevents

## II. RECONSIDERATION STANDARD[6]

Local Civil Rule 7.1(i) allows a party to seek reconsideration of a court's decision if there are "matters or controlling decisions which counsel believes the Judge ... has overlooked." L. Civ. R. 7.1(i). See also Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 215 F. Supp. 2d 482, 507 n.12 (D.N.J. 2002).[7] Relief by way of a motion for reconsideration is "an extraordinary remedy" that is to be granted "very sparingly." Interfaith Cmty. Org., 215 F. Supp. 2d at 507. A motion for such reconsideration must be filed "within 10 days after the entry of the order or judgment on the original motion." L. Civ. R. 7.1(i). A timely motion for reconsideration may only be granted if "(1) an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or prevent manifest injustice." Interfaith Cmty. Org., 215 F. Supp. 2d at 507; North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995). Hence, a "party seeking

---

'the confusion and inefficiency which would of necessity result were two courts to be considering the same issue or issues simultaneously.'" Bensalem Tp. v. Int'l Surplus Lines Ins. Co., 38 F.3d 1303, 1314 (3d Cir. 1994) (quoting Venen, 758 F.2d at 121). However, the Federal Rules of Appellate Procedure provide that "a notice of appeal filed before the disposition of" a timely filed motion pursuant to Fed. R. Civ. P. 59(e) "shall have no effect." Fed. R. App. P. 4(a)(4); see also United States v. Rogers Transp., Inc., 751 F.2d 635, 636 (3d Cir. 1985). Here, Plaintiff timely filed this motion for reconsideration before filing a notice of appeal with the Third Circuit, accordingly, I retain jurisdiction and decide the motion.

[6] While the Federal Rules of Civil Procedure do not expressly recognize motions for "reconsideration," United States v. Compaction Sys. Corp., 88 F. Supp. 2d 339, 345 (D.N.J. 1999), the Local Civil Rules governing the District of New Jersey do provide for such a review. See Lite, N.J. Federal Practice Rules, Comment 6 to L. Civ. R. 7.1 (Gann 2005). Courts in this district have routinely held that although Local Civil Rule 7.1(i) is entitled "Motions for Reargument," "'[r]econsideration' and 'reargument' are interchangeable terms," and, however denominated, are governed by the rule. Public Interest Research Group v. Yates Indus., 790 F. Supp. 511, 512 n.1 (D.N.J. 1991). Consequently, motions for reconsideration filed in the District of New Jersey are governed by L. Civ. R. 7.1(i), rather than Fed. R. Civ. P. 59(e). Compaction Sys. Corp., 88 F. Supp. 2d at 345.

[7] In Interfaith Cmty. Org., the court cited L. Civ. R. 7.1(g) as the provision governing a motion for reconsideration in this district. On February 24, 2005, certain amendments to our Local Rules became effective. Reconsideration motions are now governed by L. Civ. R. 7.1(i).

reconsideration must show more than a disagreement with the court's decision," Panna v. Firstrust Sav. Bank, 760 F. Supp. 431, 435 (D.N.J. 1991), and will fail to meet its burden if it merely presents "a recapitulation of the cases and arguments considered by [the] Court before rendering its original decision." Elizabethtown Water Co. v. Hartford Casualty Ins. Co., 18 F. Supp. 2d 464, 466 (D.N.J. 1998) (quoting Carteret Sav. Bank, F.A. v. Shushan, 721 F. Supp. 705, 706 (D.N.J. 1989)). The Court will only grant such a motion if the matters overlooked might reasonably have resulted in a different conclusion. Bowers v. Nat'l Collegiate Athletic Assoc., 130 F. Supp. 2d 610, 613 (D.N.J. 2001). In sum, it is improper on a motion for reconsideration to "ask the Court to rethink what it ha[s] already thought through – rightly or wrongly." Oritani Sav. & Loan Ass'n v. Fidelity & Deposit Co., 744 F. Supp. 1311, 1314 (D.N.J. 1990).

Here, Plaintiff offers several arguments in support of its motion for reconsideration. See generally Plaintiff's Brief in Support of Reconsideration ("Pf. Rec. Br."). Plaintiff's principal contention is that my determination that it was fully compensated for its damages associated with the Beckett Street Terminal collapse by Lexington's $7,315,926 insurance settlement was erroneous. Id. at 13-15. Essentially, Plaintiff asserts that I failed to correctly evaluate the proofs it submitted as evidence of the extent and character of its losses, and thus, as a result, I erroneously concluded that Plaintiff had been fully compensated for all of its damages. Plaintiff's remaining arguments on this motion necessarily require success on this initial assertion, thus, I consider it first.[8]

[8] Specifically, Plaintiff also argues that the collateral source rule applies and bars a setoff in favor of Lexington of any additional recovery Plaintiff might secure in an independent tort action against Defendant. Plaintiff asserts that even if New Jersey's collateral source rule does not apply, admiralty law

Plaintiff begins with the assertion that the summary judgment record contained sufficient evidence for me to have found that Plaintiff suffered losses that were not compensated by Lexington's insurance payment. See Pf. Rec. Br. 14. Thus, Plaintiff urges that I now review the evidence and reach the opposite conclusion from that which I reached on my initial consideration. Such a request is inappropriate. As set forth above, a motion for reconsideration is not intended as a vehicle for a dissatisfied litigant to merely request that a court take a second look at the record and reach a conclusion that litigant would prefer. See Panna, 760 F. Supp. at 435; Oritani Sav. & Loan Ass'n. 744 F. Supp. at 1314. Accordingly, I decline Plaintiff's invitation to reconsider my original factual findings.

Next, Plaintiff asserts that I misunderstood the appropriate measure of damages while considering Defendant's summary judgment motion and that I did "not take into consideration all of the factors which must be examined to determine what it really means for a plaintiff to receive a double recovery." See Pf. Rec. Br. 14. Specifically, Plaintiff asserts that I should have considered its "real loss" or its "actual damage incurred" when evaluating whether it had been fully compensated for its losses by Lexington. However, as it did in its opposition to Defendant's summary judgment motion, Plaintiff also concedes that "the law does not allow for

---

imposes the rule in cases such as this. Plaintiff also argues that I should not have invalidated Lexington's assignment of its subrogation rights as against public policy, and instead should have allowed the assignment to prevent Defendant from avoiding responsibility for its acts. Finally, Plaintiff also argues that because my ruling restored Lexington's right to pursue an action in subrogation against Defendant, Plaintiff should be allowed to recover from Lexington the percentage of any award as specified in the insurance contract between the two.

Notwithstanding any of those arguments, if there is no material factual dispute that Plaintiff has not suffered demonstrable losses in excess of those for which it has already been compensated by Lexington, there is no basis to disturb my earlier Order granting Defendant's motion for summary judgment.

[it] to recover its full loss from the tortfeasors, but rather imposes a limit set by the depreciated value of the item lost."[9] Id. at 14-15. Nevertheless, Plaintiff argues that, for purposes of determining the possibility of a double recovery, I should have measured the $7,315,926 it received from Lexington against the near $15 million in damages Plaintiff outlined in the insurance claim it submitted to Lexington, which set forth Plaintiff's costs estimates to rebuild the Beckett Street Terminal, replace any damaged equipment, and return to the status quo ante. The argument is without merit.

In an action for damages due to the negligence of others in admiralty cases, the injured party is generally entitled to be put in as good a position as he or she was before the damage to his or her property. BP Exploration & Oil, Inc. v. Moran Mid-Atlantic Corp., 147 F. Supp. 2d 333, 337 (D.N.J. 2001) (citing The Baltimore, 75 U.S. (8 Wall.) 377, 385-86 (1869); Standard Oil Co. v. S. Pac. Co., 268 U.S. 146, 155 (1925)). In a case in which the plaintiff suffers a total loss, either actual or constructive, "he or she may recover the value of the property lost just before the damage." BP Exploration & Oil, Inc., 147 F. Supp. 2d at 337. If the loss is not complete and repairs are feasible, the measure of damages is the cost of such repairs. Id. However, if those costs exceed the value just before the damage, the plaintiff is limited to the value just before the damage. Id. (citations omitted).

Here, Plaintiff asserts that "whether recoverable from [Defendant] or not" the replacement cost of its losses, nearly $15 million, should be the gauge of its losses for purposes

---

[9] In my August 1, 2006 Opinion, I specifically noted Plaintiff's concession regarding its ability to recover only the depreciated or actual value of its losses, rather then the replacement value to which it was entitled under its insurance contract with Lexington. See In Re Weeks Marine, 2006 WL 2191338, *8 (D.N.J. August 1, 2006).

of evaluating whether it was fully compensated. Id. at 15. For additional emphasis, Plaintiff also asserts the same argument elsewhere in its brief. While challenging my conclusion that Lexington's assignment of its subrogation rights to Plaintiff was invalid because it would have positioned Plaintiff to receive a true double recovery, Plaintiff argues:

> Admittedly, [Defendant] can only be liable for the depreciated value of [Plaintiff's] property ... which is approximately $6,303,796, but the recovery of this amount [from Defendant] would not constitute a double recovery. Rather, it would be the second installment of the payment owed by Lexington under the insurance policy and would be the only payment made by [Defendant].

Pf. Rec. Br. at 8.

The argument erroneously assumes that Plaintiff is entitled to the full amount potentially available to it under its insurance contract with Lexington, which, according to Plaintiff, provided for recovery of replacement costs. However, in a negligence suit against Defendant or any other responsible tortfeasor, Plaintiff may recover *only* those damages to which it is legally entitled. Here, that amount is the depreciated value of its total losses. While the terms of Plaintiff's insurance contract with Lexington may have entitled Plaintiff to a different measure of damages, that alternative standard is inapplicable outside of the insurance context. Plaintiff is mistaken in its insistence that I failed to accurately measure its damages.

Finally, although Plaintiff asserts that the record contained sufficient evidence to allow it to prevail on Defendant's motion for summary judgment, Plaintiff argues that I should consider its additional evidentiary submissions in support of the argument that it has not been fully compensated. On a motion for reconsideration, the only factual review a court will undertake is of evidence not available to the party seeking reconsideration at the time of the court's disposition of the original motion at issue, or evidence presented during the original proceedings

but overlooked by the court. See Interfaith Cmty. Org., 215 F. Supp. 2d at 507. In this case, the supplemental evidence that Plaintiff attaches to its moving papers was available to it throughout its opposition to Defendant's summary judgment motion.[10] Plaintiff simply failed to present it to the Court. Accordingly, Plaintiff's proposed "new" evidence satisfies neither of the requirements for review on this motion for reconsideration. On this motion for reconsideration, I will not permit Plaintiff a second opportunity to meet its burden to create a material issue of fact sufficient to defeat Defendant's summary judgment motion with evidence Plaintiff originally ignored but has now decided is relevant.

In considering Defendant's motion for summary judgment, I carefully reviewed the evidence Plaintiff presented in support of its assertion that it had suffered losses in excess of the amount it received from Lexington and for which it remained uncompensated. However, I found no competent evidence of the existence of any such losses. Plaintiff did not present an evaluation of its depreciated total losses that accounted for its insurance recovery. Instead, Plaintiff presented only an estimate of its depreciated total losses in the amount of approximately $6,304,000. As a matter of law, the depreciated total of Plaintiff's original losses is all that Plaintiff is entitled to recover in a negligence action against Defendant. Accordingly, since Plaintiff failed to present evidence of depreciated losses in an amount greater that the $7,315,926

[10] Indeed, Plaintiff's Exhibit A, a Depreciation and Valuation Report of Damages at the Beckett Street Terminal, is dated February 17, 2005, more than eight months before Defendant filed its motion for summary judgment on Plaintiff's Cross-Claim, on October 31, 2005. Similarly, Exhibit C, an appraisal by an independent agency retained by Plaintiff, is dated November 30, 2001, almost four years before Defendant's motion. Plaintiff's Exhibit B is a sworn affidavit by Joseph Balzano, Plaintiff's Chief Executive Officer, dated July 10, 2006. However, the only relevant information in the Affidavit pertains to the cost of construction undertaken "[i]n 2004-2005" and the value of other construction which has yet to commence. Such information was available well before Defendant filed its motion for summary judgment.

which it had received from Lexington, I concluded that any additional compensation, especially the several million dollars that Plaintiff sought from Defendant, would result in a windfall double recovery, prohibited under New Jersey law. On this motion, Plaintiff presents no basis to disturb that conclusion.[11]

## III. CONCLUSION

As discussed above, Plaintiff presents no controlling law not already considered by the Court in this matter. Nor does Plaintiff demonstrate with factual evidence not previously available to it, that my August 1, 2006 Order granting summary judgment on Plaintiff's Cross-Claims contained an error requiring modification of the judgement therein. Accordingly, Plaintiff's motion for reconsideration is denied.

An appropriate Order shall follow.

/s/ Freda L. Wolfson
Honorable Freda L. Wolfson
United States District Judge

Date: September 29, 2006.

[11] My conclusion on this argument necessarily precludes any consideration of Plaintiff's remaining assertions. In any event, I note each of Plaintiff's additional arguments fall short of the standard in L. Civ. R. 7.1 required to trigger reconsideration.